## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CINDY KOONCE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>SAZERAC COMPANY, INC.,<br><br>    Defendant. | Case No. 7:23-cv-04323-KMK<br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Cindy Koonce ("Plaintiff") brings this First Amended Class Action Complaint in her individual capacity as well as on behalf of all others similarly situated against Sazerac Company, Inc. ("Sazerac" or "Defendant"), and alleges, upon personal knowledge as to her own actions, her counsel's investigation and upon information and good faith belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.    Sazerac is a self-described "premier global spirits company," whose apparent 400 year history was rooted in Cognac spirits and includes the creation of the "Sazerac" cocktail.[1]

2.    Under its umbrella, Sazerac has numerous well-known liquor brands in the United States going far beyond their Cognac roots, including items such as Southern Comfort whiskey, Fireball whiskey, Wheatley Vodka, Romana Sambuca, and Parrot Bay Rum.[2]

3.    According to Sazerac, the "Parrot Bay" lines of rum "give[] rum drinkers consistent quality and festive versatility for great tasting, tropical cocktails."[3]

---

[1] https://www.sazerac.com/our-company/our-story.html (last accessed July 28, 2023).
[2] https://www.sazerac.com/our-brands/sazerac-brands.html (last accessed July 28, 2023).
[3] https://www.sazerac.com/our-brands/sazerac-brands/parrot-bay.html (last accessed July 28, 2023).

4.    Parrot Bay's "original" variant is advertised as a Puerto Rican Rum with Natural Coconut Flavor, and is 21% alcohol by volume (ABV):



5.    Traditionally, rum contains about 40% ABV, but can exist in a range of ABV's from 20% on the low end to 75.5% ABV on the high end.[4]

6.    When individuals buy Parrot Bay rum – as they do other rums – the alcohol content is a major component, if not the driving force, of the decision to purchase an alcoholic beverage.

7.    Ordinary consumers understand that "rum" and its familiar brand names – Malibu, Bacardi, Parrot Bay, etc. – are alcoholic beverages, with all of the qualities implied therein.

8.    Sazerac has used the familiar nature of these symbols – the brand name of "Parrot

---

[4] https://www.arkbh.com/alcohol/types/liquor/rum/alcohol-content/ (last accessed July 28, 2023).

Bay" and not one difference in the tropic-themed logo – to sell products that are, decidedly, not rum.

9.     In fact, Sazerac sells a "Parrot Bay Malt Beverage" Product (the "Malt") that does not adequately or expressly communicate the lack of alcoholic content as compared to the original it copies to the detriment of consumers.

10.    Plaintiff and a class of similarly-situated consumers purchased the Malt relying on Sazerac's representations and believing it to be true Parrot Bay Rum; in fact, they purchased a "Malt Beverage," with lower than 20% ABV and that is not called "rum" at all.

11.    Plaintiff, like all reasonable consumers,  suffered injury in the form of the purchase price; indeed, had she known she was not buying real rum, she would not have purchased the Malt beverage at all.

12.    Now, Plaintiffs brings this action against Sazerac Company, Inc., alleging violations of New York's General Business Law §§ 349 & 350, and unjust enrichment on the part of Sazerac.

## JURISDICTION AND VENUE

13.    Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2), which confers subject matter jurisdiction to the Southern District of New York because 1) this is a class action involving more than 100 class members and at least one class member is a citizen of a state different from Sazerac; and 2) the amount in controversy is in excess of $5,000,000.00, exclusive of interest and costs.

14.    This Court has personal jurisdiction over Sazerac because Sazerac conducts and transacts business in the state of New York, and contract to supply goods within the State of New York, such that they have continuous and systematic contacts with the State of New York.

15.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a

substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

16.   Plaintiff Cindy Koonce is an individual consumer who, at all times material hereto, was a citizen of the State of New York, residing in Newburgh, Orange County, New York. Plaintiff purchased the Malt in New York multiple times during the Class Period.

17.   Defendant Sazerac Company, Inc. is a corporation registered in both Louisiana and Kentucky with its principal place of business at 101 Magazine Street, 5th Floor, New Orleans, LA 70130.

18.   Sazerac manufactures, markets, advertises, and distributes the Malt throughout the United States, including New York. Defendant created and/or authorized the false, misleading ,and deceptive advertisements, packaging, and labeling for the Malt .

## COMMON FACTUAL ALLEGATIONS

19.   Sazerac's four centuries of growth and acquisition or inception of hundred of brands of liquor has led it to be a behemoth, with zoominfo.com reporting revenue of nearly $3 billion dollars.[5]

20.   However, in spite all of this success, Sazerac used its platform and well-known brands to create "dupes" of its products, meant to lure the consumer into buying a product they believed was the genuine item – when really, it is a clever fake.

**Sazerac's History of Promulgating Pseudo-Liquors**

21.   In New York, by 2021, there began to be public recognition of Sazerac's the Malt beverages across its brands.

22.   Not far from this Court in Poughkeepsie, radio host CJ McIntyre of 101.5 WPDH,

---

[5] https://www.zoominfo.com/c/sazerac-co/74826199 (last accessed July 28, 2023).

"the home of rock and roll in the Hudson Valley," was shocked to see "a huge Fireball display in front of the cash register" at a gas station convenience store.[6]



23.   McIntyre remarked that "[he] thought [Fireball] was something you could only buy at a liquor store, right? I mean it's cinnamon flavored whiskey!!"[7]

24.   He wondered if "this specific store [was] doing something they're not supposed to be doing?"[8]

25.   Up in the Capital Region, Q105.7's Steve King reported a similar experience, when he "stopped for gas at my local convenient store and went in to grab a cup of coffee," "surprised by a new countertop display next to the cash register … little bottles of Fireball."[9]

---

[6] CJ McIntyre, <u>Since When Can You Buy Fireball at Gas Stations in the Hudson Valley?</u>, 101.5 WDPH, Hudson Valley Country, May 14, 2021 (last accessed July 28, 2023).
[7] *Id.*
[8] *Id.*
[9] Steve King, <u>Wait? Can You Buy Fireball at Gas Stations & Grocery Stores Now?</u>, Q105.7 WQBK-FM, April 9, 2021. (last accessed July 28, 2023).




26.   Incredulous, King "asked the cashier behind the counter, 'You carry Fireball now?' she said, 'Yeah, I guess.'"[10]

27.   King "thought it was weird seeing Fireball for sale in the gas station since [he] thought liquor could only be sold in liquor stores in New York," until he learned from the Albany Times Union "that wasn't Fireball Cinnamon Whisky (left) [] at the gas station/convenience store. Nope, it was Fireball Cinnamon (right)."[11]

---

[10] *Id.*
[11] *Id.*

 

28.     Senior Writer and Arts Editor Steve Barnes wrote how "[A] friend who peddles booze for a living dropped me a note describing upset among his client liquor stores because customers think Fireball Cinnamon Whisky is being sold in supermarkets in small bottles for 99 cents."[12]

29.     Fireball Cinnamon "clocks in at 33 proof, or 16.5 percent [ABV] [while] Fireball Cinnamon Whisky is [] 66 proof [and 33 percent ABV]."[13]

30.     According to Barnes, "The labels look almost identical [and] [T]hat is intentional." but if consumers "look closer [they] will see [one is] actually called simply "'Fireball Cinnamon (notice there's no Whisky after the word Cinnamon)," flavored to taste like cinnamon whisky."[14]

---

[12] Steve Barnes, Liquor stores heated up over sneaky Fireball move, Table Hopping Blog, Albany Times Union, April 8, 2021. (last accessed July 28, 2023).
[13] *Id.*
[14] *Id.*

 

31.     As Barnes succinctly states: "it's an easy mistake to make, and one intended by the manufacturer."[15] That manufacturer is Sazerac – who also manufactures the Malt.

**The "Malt" v. True Parrot Bay Rum**

32.     The sale of distilled spirits in small bottles, referred to as "minis" or "nips," is common and known to most Americans due to their abundance on the side of most roads or from being available on airplanes.

33.     Until a few years ago, no consumers would have seen non-distilled spirits sold in mini bottles.

34.     The concept of bottling non-distilled spirits in a mini bottle is deceptive, because purchasers of small bottles of alcohol expect what they are buying is potent and high in proof, like Parrot Bay, bottled at 21% alcohol by volume ("ABV") or 42 proof.

35.     Purchasers of mini bottles of alcohol are not expecting that what they are buying will be not nearly as strong, as the Malt is 16.5% ABV and 33 proof.

36.     The Malt uses the same font for its name and its flavor; the same beach background with the titular parrot, and all-in-all looks nearly identical:

---

[15] *Id.*






37.     It is only on the closest inspection – reading the finest print on a "mini" or "nip" bottle – does Sazerac omit the word "rum" on the Malt:



38.     Making the confusion between the two even worse is the inclusion of the same logo placed over a beach with a parrot landing on the name font-type, and bottle design prominently on the front label of both the original distilled version as well as the mini Malt version.

39.     A consumer familiar with Parrot Bay and with rum-branding in general who purchased the Malt would have to scrutinize farther than the reasonable consumer is expected to for them to understand there is no rum and there is less alcohol in the "Malt" than there is in true, authentic Parrot Bay Rum.

40.     When viewed together with the Parrot Bay Rum distilled spirit brand name, the label misleads consumers into believing it is or contains distilled spirits, or in fact rum.

41.     Only if a purchaser has the distilled spirit version next to the mini version (and perfect eyesight) – which based on their places of sale, they will not – could they notice the true Parrot Bay Rum is identified as "Rum with Natural Coconut Flavor." Unfortunately for most consumers in New York, the distilled spirit version is not available for sale in the same stores as the "mini" or Malt version, making any comparison impossible. But even in those stores where the two products are sold contemporaneously, reasonable consumers do not, and are not required to, grab similar versions of the same product, flyspeck the labels to confirm, or in this case correct, the

deception.

42.     The similarly between the two versions creates an overall misleading impression that the mini versions are simply smaller—but otherwise identical—versions of the larger distilled spirits.

43.     Supporting the view that such statements are misleading are the regulations issued by United States Treasury Department's Federal Alcohol and Tobacco Tax and Trade Bureau ("TTB").[16]

44.     Specifically, Specifically, 27 C.F.R. § 7.128 (emphasis added) states:

(a) General. Except as provided in paragraph (b) of this section, containers of malt beverages, or any labels on such containers, or any carton, case, or individual covering of such containers, used for sale at retail, or any written, printed, graphic, or other material accompanying such containers to the consumer, ***must not*** contain any statement, design, device, or representation that tends to create a false or misleading impression that the malt beverage contains distilled spirits or is a distilled spirits product.

45.     This regulation is reinforced by § 7.235, which states:

(a) General prohibition. An advertisement of malt beverages must not contain:

(8) Any statement, design, device, or representation that tends to create a false or misleading impression that the malt beverage contains distilled spirits or is a distilled spirits product. Advertisements may include the types of statements that are listed as being not prohibited on labels in § 7.128(b).

46.     Finally, § 7.143 states, in relevant part (emphasis added):

(h) Malt beverages aged in barrels—

(3) Misleading designations. Designations that create a misleading impression as to the identity of the product by emphasizing certain words or terms are prohibited. As set forth in § 7.122, designations may not mislead consumers as to the age, origin, identity, or other characteristics of the malt

---

[16] To be absolutely clear, Plaintiff is not bringing claims under the TTB. Rather, she points to these regulations to support her allegation that a reasonable consumer would be deceived by Defendant's labeling of the Products.

beverage. Examples of designations that would be prohibited under this provision are "bourbon ale," "bourbon-flavored lager," "Chardonnay lager," or "lager with whisky flavors."

47.     The Product is sold at a premium price, $1.42 for a 1.69oz "shot."

48.     Purchasers of the Malt are injured when they purchase Malt, believing Sazerac's representations that what they are buying is, in fact, Parrot Bay Rum, that what they have bought and consumed is not true Parrot Bay Rum nor contains any actual rum at all.

49.     Additionally, Plaintiff and the Class members were injured by paying a premium price for the Products over competing product not masquerading as distilled liquor.

**Plaintiff Was Injured By Her Purchase of the Malt**

50.     Plaintiff Koonce purchased Parrot Bay Rum at gas station convenience stores and convenience stores in and around Newburgh, NY, at stores such as 1247 Deli Grocery Corp., 5 Corners Market, Adam's Market Deli & Grocery, and various Citgo gas stations between June 2020 and May 2023.

51.     When Plaintiff saw the Malt available, Plaintiff read the representations of the Parrot Bay logos, font size and type, and Sazerac's omissions as to the rum content, thinking it was the same Parrot Bay Rum she had previously purchased at liquor stores.

52.     Plaintiff is like many consumers of alcoholic beverages who prefer distilled spirits or products containing distilled spirits, (and consumers of rum who prefer actual rum) to malt-based beverages.

53.     Plaintiff saw the labeling elements of the Malt and did not immediately notice the differences from the Parrot Bay Rum.

54.     Plaintiff expected the Malt to be rum and/or contain actual rum in a non-de minimis amount.

55.     Plaintiff paid more for the Malt than she would have had she known the

representations and omissions were false and misleading. Alternatively, had Plaintiff known the representations and omissions were false and misleading, she would not have purchased it.

56.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

## **CLASS ALLEGATIONS**

57.    Plaintiff brings her claims for relief pursuant to the Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following Class (collectively "the Class")

> All persons in the State of New York who purchased the Malt during the statutes of limitations for each cause of action alleged.

58.    Excluded from the Class are government entities, Sazerac, any entity in which Sazerac has a controlling interest, and Sazerac's officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assignees, as well as any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

59.    The Class is properly brought and this action should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy.

60.    **Numerosity**. The Class is so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers in the Class as described above who have been damaged by Sazerac's deceptive and misleading practices.

61.    **Commonality**: The questions of law and fact common to the Class which predominate over any questions which may affect individual members of the Class include, but are not limited to:

A.    Whether Sazerac is responsible for the conduct alleged herein which was uniformly

directed at all consumer who purchased the Malt;

B.      Whether Sazerac's misconduct set forth in this Complaint demonstrates that Sazerac had engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Malt;

C.      Whether Sazerac breached express and implied warranties relating to the Malt;

D.      Whether Sazerac's false and misleading statements concerning its Products were likely to deceive the public;

E.      Whether Sazerac fraudulently advertised the Malt to the public;

F.      Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other members of the Class; and

G.      Whether Sazerac was unjustly enriched by way of its deceptive advertising to Plaintiff and the Class.

62.   **Adequacy:** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent, she has a strong interest in vindicating her rights and the rights of the Class, she has retained counsel competent and experienced in complex class action litigation, and counsel intends to vigorously prosecute this action.

63.   **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Sazerac's deceptive and misleading marketing and labeling practices.

64.   **Superiority:** A class action is superior to the other available methods for the fair and

efficient adjudication of this controversy because:

a)    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b)    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claims, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c)    When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d)    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e)    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f)    This class action will assure uniformity of decisions among Class members;

g)    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h)    Class members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i)    It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Sazerac's uniform false advertising to purchase their Products because they were represented as having actual rum when the Malt does not.

65.    Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

**CAUSES OF ACTION**

**COUNT I**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and the Class)**

66.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

67.    Plaintiff brings this claim individually and on behalf of the Class against Sazerac.

68.    This claim is brought pursuant to the laws of the State of New York.

69.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

70.    Sazerac committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the composition of the Malt, in that it was not actual rum and contained neither actual rum nor distilled spirits.

71.    Sazerac's deceptive acts and practices were directed at consumers.

72.    Sazerac's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations. Sazerac knew consumers would purchase its Products and/or pay more for them under the false – but reasonable – belief that it was true Parrot Bay Rum, based on the Parrot Bay title, logo, font, and font size.

73.    Sazerac knows that composition and alcohol content is material to consumers. If such information were not material, Sazerac would not market the Malt in an identical fashion to the way it markets actual Parrot Bay Rum. As a result of its deceptive acts and practices, Sazerac sold tens if not hundreds of thousands of the Malt to unsuspecting consumers across New York.

74.    If Sazerac had advertised the Malt truthfully and in a non-misleading fashion,

Plaintiff and other Class members would not have purchased them or would not have paid as much as they did for them.

75.     As a direct and proximate result of Sazerac's false, misleading, and deceptive representations and/or omissions, Plaintiff and other members of the Class were injured in that would not have purchased the Malt, or would have paid substantially less for it, but for Sazerac's misrepresentations and omissions concerning the rum and distilled spirit content (or lack thereof) in the Products.

76.     On behalf of herself and members of the Class, Plaintiff seeks to recover her actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT II**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the Class)**

77.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

78.     Plaintiff brings this claim individually and on behalf of the Class against Sazerac.

79.     This claim is brought pursuant to the laws of the State of New York.

80.     N.Y. Gen. Bus. Law § 350 provides, in part, as follows: False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

81.     N.Y. Gen. Bus. Law § 350-A(1) provides, in part, as follows: "The term 'false advertising,' means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account

(among other things) not only representation made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual."

82. Sazerac's labeling and advertisements contain untrue and materially misleading statements concerning Sazerac's the Malt inasmuch as they misrepresent the existence of rum and distilled spirits in the Malt. By misrepresenting the true contents of the Malt, Sazerac's marketing and labeling misleads a reasonable consumer.

83. Sazerac had exclusive knowledge of the lead levels in the Products.

84. Sazerac's misrepresentations and omissions were material because consumers are concerned with the authenticity, quality, and content of alcoholic beverages that they purchase, necessarily including the ingredients therein.

85. As a result of Sazerac's misrepresentations and omissions, Plaintiffs and members of the Class have suffered economic injury because they would not have purchased the Malt, or would have paid substantially less for it, if they had known that the Malt did not contain actual rum or distilled spirits.

86. Sazerac's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Malt were and continue to be exposed to Sazerac's material misrepresentations.

87. As a result of Sazerac's recurring, unlawful deceptive acts and practices, Plaintiff and the Class are entitled to monetary, statutory damages of $500 per unit sold, compensatory, treble and punitive damages, restitution, and disgorgement of all moneys obtained by means of

Sazerac's unlawful conduct, interest, and attorneys' fees and costs.

## COUNT III
### UNJUST ENRICHMENT
#### (On behalf of Plaintiff and the Class)

88.     Plaintiff repeats and re-alleges each allegation contained in the Complaint as if fully set forth herein.

89.     Plaintiff brings this claim in the alternative to the above claims.

90.     Plaintiff brings this claim individually and on behalf of the Class against Sazerac.

91.     This claim is brought pursuant to the laws of the State of New York.

92.     Sazerac's conduct violated, inter alia, state and federal law by manufacturing, advertising, marketing, and selling its the Malt while misrepresenting and omitting material facts.

93.     Sazerac's unlawful conduct as described in this Complaint allowed Sazerac to knowingly realize substantial revenues from selling their the Malt at the expense of, and to the detriment or impoverishment of, Plaintiff and Class members, and to Sazerac's benefit and enrichment. Sazerac has thereby violated fundamental principles of justice, equity, and good conscience.

94.     Plaintiff and Class members conferred significant financial benefits and paid substantial compensation to Sazerac for the Malt , which was not as Sazerac represented it to be.

95.     It is inequitable for Sazerac to retain the benefits conferred by Plaintiff and Class members' overpayments.

96.     Plaintiff and Class members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class members may seek restitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

(a)     For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiff as the representative of the Class and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order declaring Sazerac's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest in all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For an order awarding Plaintiff and the Class their reasonable attorney's fees and expenses and costs of suit.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: August 10, 2023                                    Respectfully submitted,

                                                                          */s/ Charles D. Moore*
                                                                          Charles D. Moore
                                                                          **REESE LLP**
                                                                          121 N. Washington Ave., 4th Floor
                                                                          Minneapolis, MN 55401
                                                                          Tel: (212) 643-0500
                                                                          cmoore@reesellp.com

                                                                          Michael R. Reese
                                                                          **REESE LLP**

100 West 93rd Street, 16th Floor
New York, NY 10025
Tel: (212) 643-0500
mreese@reesellp.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis*
954 Avenida Ponce De Leon
Suite 205, #10158
San Juan, PR 00907
Tel: (215) 789-4462
klaukaitis@laukaitislaw.com

*Pro Hac Vice Application Forthcoming*

*Counsel for Plaintiff Cindy Koonce*